Rheta **BRICILLO,** Thomas P. Chorba, Dawn DeLahunty, Diane DeSalvo, Mary Frances Duncan, Cynthia Gedman, Colleen Gropp, Dorothea Kelly, Karen Legin, Shelly Moran, Carolyn Perrin, Deanne Solomon, Paul Sweda, Elizabeth West, Darla Williams, Mary Ellen Yanitz, Appellants,

v.

**DUQUESNE CITY SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1995.

Decided Dec. 20, 1995.

Ronald N. Watzman, for appellants.

Ira Weiss, for appellee.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Sixteen professional employees (Employees) formerly employed by the Duquesne City School District (School District) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) affirming the Board of School Directors of the City of Duquesne's (Board) decision to suspend Employees by the School District resulting from the consolidation of the elementary school with the middle and secondary schools, as well as suspensions resulting from the elimination of certain programs.

During the 1992–93 school year, the School District maintained a separate elementary school building, but because of its dilapidated condition, the School District closed that building. Beginning in the 1993–94 school year, it moved the elementary education pro-

gram to the same building used for the middle school and the high school grades. Even though located in the same building as the middle and high school, the elementary school had its own principal, separate entrances, eating and physical education facilities. Because middle school can be taught by teachers certified in either elementary or secondary education, with all grades in the same building, the School District was then able to schedule professional staff more efficiently, making it possible to reduce the number of professional positions. Relying on Section 1124 of the Public School Code of 1949 [1] that allows for the suspension of professional employees when there is a consolidation of schools, the School District furloughed 16 professional employees.

Employees appealed their suspension to the School Board contending that the Section 1124(3) requirement that there must be a consolidation of schools before the School District could suspend professional employees was not met because the elementary school was not consolidated with the middle or high school, but continued to maintain a separate existence. They also contended that certain suspensions were not caused by the consolidation, but by the improper elimination of courses or the impermissible altering of the educational programs. The School District appointed a Hearing Examiner to take evidence and make recommended findings. After a hearing, the Hearing Examiner made proposed findings that the placing of the elementary school with the middle school and high school was a consolidation of

schools within the meaning of the Public School Code, and there was no elimination of course or impermissible altering of programs and upheld the suspension of the teachers. The Board adopted the Hearing Examiner's findings, which Employees appealed to the trial court. Without taking any additional evidence, the trial court affirmed the Board and this appeal followed.[2]

As before the Board, Employees contend that the elementary school was not consolidated with the middle or high school, but simply moved to a different building and is still a separate school maintaining its own curriculum, administrators and teachers, as well as being housed in its own section of the building and, therefore, there was not a consolidation. For there to be a consolidation, Employees urge us to construe the phrase "consolidation of schools" as to require that the schools come together to form a new and distinct entity, with the previously existing entities ceasing to exist.

Neither the Public School Code nor the Department of Education regulations define the phrase "consolidation of schools", and neither party cites nor does our research reveal any Pennsylvania case law defining the term "consolidation." As that phrase is commonly used, however, we agree with the definition of the term "consolidation" as discerned by the Board from various dictionaries as to mean "uniting, combining or merging".[3] Contrary to the narrow definition

---

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1124, which provides:

    Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

    . . . . .

    *(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employees.* (Emphasis added).

2. "When a complete record of the proceedings before the local agency has been made and no additional testimony has been taken before the court below, we are required to affirm the action of the local agency unless we find that it was in violation of the constitutional rights of the appel-

lant, or that the agency manifestly abused its discretion or committed an error of law, or that any finding of fact made by the agency and necessary to sustain its adjudication is not supported by substantial evidence." *Hickey v. Board of School Directors of Penn Manor School District*, 16 Pa.Cmwlth. 319, 328 A.2d 549, 551 (1974).

3. The Statutory Construction Act, 1 Pa.C.S. § 1903, provides:

    Words and phrases shall be construed according to rules of grammar and according to their common and approved usage, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning, or are defined in this part shall be construed according to such peculiar and appropriate meaning or definition.

Employees propose,[4] unite, combine or merge as used in this context does not mean that there must be a complete integration of all aspects of the operation; all that you have to do is bring those activities together. For example, when a company has its offices scattered in different buildings, when it brings them together, that is called a "consolidation of offices", even though the different offices operate the same as when they were in different locations; after a corporate consolidation, the Human Resources Department and the Accounting Department do not cease to exist as separate entities. While in a company consolidation, departments are not integrated, there are economies that result from the sharing of certain central staff support; e.g., copying services, receptionists, computers and so on. The same type of consolidation occurred here when the elementary school moved into the same building as· the middle and high school. While the elementary school has a separate principal and operates in a separate part of the building, it is within the same building and to the extent certification permits, professional and non-professional staff were consolidated, allowing for the staff reductions, as well as the sharing of other overhead costs. Just as when a company brings together all its offices in one location is a "consolidation", the action of the School District in moving the elementary school into the same building with the middle school and high school also falls within the common meaning of the term.

This interpretation that consolidation occurs when schools are brought together in the same building is consistent within Section 1124(3)'s language that a "consolidation of schools, ... within a single district ... makes it unnecessary to retain the full staff of professional employees" and that the School District may lay off staff that is no longer needed. To interpret it otherwise would mean that the School District would have to pay for teachers, here 16, who are not needed. This would be against the General Assembly's[5] intent in enacting Section 1124 of the Public School Code of promoting efficiency by consolidation within a school district. *Kaplan v. School District of Philadelphia,* 178 Pa.Superior Ct. 88, 113 A.2d 164 (1955), *affirmed* 388 Pa. 213, 130 A.2d 672 (1957). Because the placing of an elementary school at the same location as the middle school and high school is a consolidation within the ordinary meaning of the term, the suspensions were authorized by Section 1124(3) of the Public School Code.

■ Employees also object to the suspension of at least one teacher on grounds unrelated to the consolidation. Industrial Arts classes were not taught to grades 9–12 during the 1993–94 school year, and the Industrial Arts teacher was assigned to teach special education in the middle school. Employees argue that at least one special education teacher was suspended as a result of the reassignment of the Industrial Arts teacher. Employees assert that 22 Pa.Code § 5.4 requires Industrial Arts to be offered to all secondary education students, and that not offering such a course to students in grades 9 through 12 caused the improper suspension of at least one Industrial Arts teacher. While agreeing that the course was not taught, the School District denies that it failed to offer the course; it contends that it was offered, but that no students desired to take it.

To support its position contrary to the Board's position that no one wanted to take the course, Employees offered the testimony of Thomas Strum, a School District Guidance Counselor. He testified that in the spring of 1993, several months before the furlough, approximately 50 students had expressed an interest in Industrial Arts. He could not testify, however, if any students actually signed up for the course. For its part, the School District offered the testimony of its Superintendent, who testified that the School District offered an Industrial Arts course,

---

4. Other than certain classes of statutes not at issue here that are to be strictly construed, The Statutory Construction Act, 1 Pa.C.S. § 1928, directs that all others "shall be liberally construed to effect their objects and to promote justice."

5. The Statutory Construction Act, 1 Pa.C.S. § 1921(a), provides that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

but one was not conducted in the 1993–1994 school year for grades 9 through 12 because no students enrolled. Moreover, the Superintendent testified that even if students signed up, depending on the number, the existing faculty could handle the load without recalling any suspended teacher. Because there is substantial evidence to support the Board's conclusion that the School District, by not offering Industrial Arts classes to grades 9–12 during the 1993–94 school year was a result of no one enrolling rather than failing to offer the course, Employees failed to meet their burden of establishing that one of them was impermissibly suspended.

■ Employees also contend that when the School District reassigned the only Instructional Support teacher, it impermissibly altered educational programs that must be approved by the Department of Education. Because it was not approved, the Employees contend that the reassignment of the Instructional Support teacher as a business teacher resulted in the suspension of Dorothy Simmons. Employees offered no evidence of their own on this issue, choosing to rely only upon the cross-examination of Ronald Mento, Superintendent of the School District. The Superintendent testified that the Instructional Support teacher for the 1992–1993 year was reassigned to teach business for the 1993–1994 school year, and Ms. Simmons, the business teacher, was then reassigned to teach elementary education. Because there was no evidence that Ms. Simmons was suspended, as evidenced by not being one of the 16 who appealed, the Employees' argument is without any factual basis.[6]

Because the elementary school was consolidated with the middle and high schools and was a consolidation as that term is used in Section 1124 of the Public School Code, and

there was no improper elimination of educational programs or altering of courses, the order of the trial court upholding the Board's decision of the suspension of Employees is affirmed.

## ORDER

AND NOW, this 20th day of December, 1995, the order of the Court of Common Pleas of Allegheny County, dated September 7, 1994, No. GD94–3146, is affirmed.

---

6. While that is the way the argument is framed in Employees' brief, because it is so apparent that Ms. Simmons was not suspended, it appears that the argument is based on an inadvertent misapprehension of the facts before the Board. Before the Board, Employees did not assert that Dorothy Simmons was suspended, but instead, argued that the improper elimination of the Instructional Support teacher without approval resulted in Ms. Simmons ultimately being reassigned, which resulted in the suspension of at least one elemen-

tary school teacher. However, that issue was not raised in the petition for review filed before the trial court but was raised in the Statement for Matters Complained Of filed pursuant to Pa. R.A.P.1925(b). The trial court did not address this issue in its opinion. In any event, because of the paucity of the evidence that the School District violated any regulation of agreement or regulations of the Department before the Board, Employees failed to maintain their burden that the program was improperly altered.